UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CV 09-0230-SVW-44 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT GLENN |
| | ) | ITO'S MOTION TO SUPPRESS |
| v. | ) | EVIDENCE; FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW [1011] |
| RAMON MENDOZA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 1, 2010, Defendant Glenn Ito filed a Motion to Suppress certain evidence obtained during and following a search of his person on January 27, 2009.

The Court held an evidentiary hearing on March 17, 2010. Having considered the parties' submissions, the attached declarations, and the testimony presented at the evidentiary hearing, the Court DENIES Defendant's Motion.

# I. FACTUAL FINDINGS

On January 27, 2009, Los Angeles County Sheriff's Department officers were surveilling the area around a "99 Cents" Store parking lot in Los Angeles. Based on intercepted phone calls, the officers believed that a heroin transaction was going to take place at that parking lot on that date between a person nicknamed "Japo" and another person called "Tio Rocquis." (Ortega Decl. ¶ 5.)

Sheriff's Deputies Jaime Ortega and Mark Carrillo were aware of the ongoing investigation, and on January 27, 2009, they were assigned to monitor radio communications and conduct traffic stops of any suspected heroin traffickers. (Ortega Decl. ¶ 4; M. Carrillo Decl. ¶ 3.)

Around 11:30 a.m., the expected drug transaction took place. (Ortega Decl. ¶ 6.) Over the police radio, Detective Joseph Carrillo[1] described the transaction to deputies Ortega and Mark Carrillo, who were nearby in their patrol car. (Ortega Decl. ¶¶ 4-6.) Detective Carrillo described an apparent drug transaction taking place inside a white Toyota RAV-4 SUV. When the SUV left the parking lot, Detective Carrillo instructed the patrol deputies to conduct an investigatory traffic stop of the vehicle. The deputies stopped the vehicle about five blocks from where the transaction took place as the vehicle was entering the on-ramp to the Interstate 5 freeway. (Ortega Decl. ¶¶ 7-8.)

---

[1] There were two Carrillos involved in this incident: Detective Joseph Carrillo and Deputy Mark Carrillo, a patrol deputy.

1    Deputy Ortega approached the driver's side and asked the driver,
2    Defendant Ito, to produce his license, registration, and proof of
3    insurance.  Defendant attempted to comply but was unable to locate his
4    registration.  While Defendant was searching for the registration,
5    Ortega smelled and recognized the distinctive odor of heroin coming
6    from the vehicle.  (Ortega Decl. ¶ 11.)[2]  Ortega then asked Defendant to
7    exit the vehicle.

8    Because on the oncoming freeway traffic, Ortega brought Defendant
9    to the front of Defendant's car.  Ortega placed Defendant's hands
10   behind his head and informed Defendant that he would conduct a pat-down
11   search for his safety.

12   Ortega then proceeded with a pat-down/frisk search of Defendant's
13   outer clothing (that is, his vest/jacket and pants).  Early in the
14   search, Ortega asked Defendant whether he had anything illegal on his
15   person.  Defendant did not audibly respond.

16   During the search, Ortega felt a bulge in Defendant's vest pocket.
17   The bulge was roughly the size of Ortega's hand and felt like a bag of
18   beans or marbles.  Ortega believed that the object might be contraband.
19   At this point, Ortega again asked Defendant if Defendant had anything
20   illegal on him.  Defendant admitted that he was carrying heroin.
21   Ortega then reached into Defendant's pocket and retrieved three plastic

---

[2] Although Defendant disputes that heroin has an identifiable odor, the Court finds by a preponderance of the evidence that heroin does in fact have an identifiable vinegar-like odor.  (Ortega Decl. ¶ 3; Debets Decl. ¶¶ 3-6; Garza Decl. ¶¶ 4-5; Sharpe Decl. ¶ 4; Neuman Decl., Ex. 2 at 445.)  The Court also finds that Deputy Ortega was familiar with that smell at the time of the traffic stop.  (Ortega Decl. ¶¶ 3, 11.)

baggies containing a total of 72 balloons filled with black tar heroin.[3] Defendant was immediately taken into custody. While in custody, Defendant received his Miranda warnings and gave a statement to police.

**II.  CONCLUSIONS OF LAW**

    **A.  DEPUTY ORTEGA HAD PROBABLE CAUSE TO ARREST DEFENDANT BECAUSE DEFENDANT ADMITTED TO POSSESSING HEROIN**

Under Terry v. Ohio, 392 U.S. 1, 27, 30 (1968), police officers may seize someone for purposes of investigating possible criminal behavior if there is an articulable suspicion that the person has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Washington, 490 F.3d 765, 774 (9th Cir. 2007).

---

[3] Defendant's version of these events is slightly different. According to Defendant, Ortega handcuffed Defendant and asked Defendant if Defendant was carrying anything illegal, to which Defendant responded with silence. Ortega then conducted a frisk search that failed to reveal any weapons or contraband. Ortega then searched Defendant's car and, finding nothing inside the car, conducted a second frisk search of Defendant. When Ortega felt the bulge in Defendant's pocket, Ortega reached in and retrieved the heroin baggies. After obtaining the heroin, Ortega then asked Defendant whether Defendant was carrying any contraband.
    The Court finds Defendant's testimony to be less credible than Deputy Ortega's. It is implausible that, as Defendant states, Ortega would have conducted two separate pat-down searches. Given the unrebutted evidence that the heroin was roughly the size of a human hand or tennis ball, it is implausible that Ortega would have failed to feel the bulge during the initial search. Likewise, it is also implausible that Defendant was handcuffed during these events but failed to remember until the day of the hearing that he was handcuffed -- particularly when both his initial declaration and the deputies' declarations and testimony corroborate Ortega's version of events. The Court accordingly finds by a preponderance of the evidence that Ortega's version of events is more accurate than Defendant's.

1    Defendant has conceded that the police had reasonable suspicion to
2 make an investigatory <u>Terry</u> stop in this case by pulling over
3 Defendant's car.  It is clear from the circumstances that the officers
4 at a minimum had reasonable suspicion to conduct an investigatory stop
5 – they received credible information that a drug transaction would be
6 taking place and that Defendant and his car matched the descriptions
7 provided by officers who witnessed the purported drug transaction.
8    Defendant also concedes that the police had a reasonable belief to
9 conduct a pat-down search of Defendant after he stepped out of his
10 vehicle.  This concession is supported by clear authority:
11    When the police have a reasonable suspicion that a suspect is
12    armed, a <u>Terry</u> pat down for weapons is permissible.  The officer
13    need not be absolutely certain that the individual is armed; the
14    issue is whether a reasonably prudent man in the circumstances
15    would be warranted in the belief that his safety or that of others
16    was in danger.
17 <u>United States v. $109,179 in U.S. Currency</u>, 228 F.3d 1080, 1086 (9th
18 Cir. 2000) (citing <u>Terry</u>, 392 U.S. at 27; <u>United States v. Flippin</u>, 924
19 F.2d 163, 166 (9th Cir. 1991)) (internal quotations and alterations
20 omitted).  This standard is an objective, not subjective, test: "the
21 issue is whether a **reasonably prudent** man in the circumstances would be
22 warranted in the belief that his safety or that of others was in
23 danger."  <u>Terry</u>, 392 U.S. at 27 (emphasis added); <u>see also</u> <u>Whren v.</u>
24 <u>United States</u>, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's
25 concern with 'reasonableness' allows certain actions to be taken in
26 certain circumstances, whatever the subjective intent [of the police
27 officer]".)
28

5

It is well-accepted that police officers may reasonably fear for their safety when in the presence of suspected narcotics traffickers. This reasonable fear justifies a frisk or pat-down search of such persons. United States v. Davis, 530 F.3d 1069, 1082-83 (9th Cir. 2008) ("Because officers reasonably suspected that Richard Davis was involved in narcotics activity, it was also reasonable for them to suspect that he might be armed."); United States v. $109,179, 228 F.3d at 1086 ("Because the police reasonably suspected Maggio of dealing in narcotics, it was not unreasonable to believe that he might be armed."); United States v. Post, 607 F.2d 847, 852 (9th Cir. 1979) ("The law does not require that an experienced DEA agent, enclosed in a small room with a man he reasonably suspects to be a dealer in narcotics, be certain that a suspect is armed before he can make a limited pat-down for weapons.").

Ortega had reasonable suspicion to believe that Defendant had been involved in trafficking narcotics. At the time of the traffic stop, Ortega had received credible information from Detective Carrillo stating that: electronic surveillance revealed that a drug deal would take place at a particular time and location, with a person nicknamed "Japo" involved; direct observations by Detective Carrillo showed that a white Toyota RAV4 SUV arrived at the stated time and location; and a person got out of another car and entered that SUV for a short period of time. Ortega also knew that the same SUV, when it was pulled over, was being driven by a person who appeared to be Asian, and would therefore fit the nickname "Japo."

From these facts, Ortega at a minimum had reasonable suspicion that Defendant was engaged in narcotics trafficking, and Ortega was

therefore permitted to conduct an investigatory stop and protective pat-down search under Terry.  Even though Ortega has not expressly stated that he subjectively feared for his safety when he asked Defendant to exit his vehicle,[4] his pat-down of Defendant was objectively reasonable in the circumstances.

Ortega also had the right to ask question during the stop and search.  See United States v. Turvin, 517 F.3d 1097, 1102 (9th Cir. 2008) ("[B]rief pauses to ask questions during traffic stops, even if those questions are unrelated to the purpose of the stop, may be permissible."); see also Muehler v. Mena, 544 U.S. 93, 101 (2005) ("We have held repeatedly that mere police questioning does not constitute a seizure.").

Because the traffic stop, pat-down search, and questioning were lawful, it follows that the seizure of the heroin was also lawful.  In response to one of Ortega's questions, Defendant admitted that he was carrying heroin.  At that point, Ortega clearly had probable cause to arrest Defendant, and the act of reaching into Defendant's vest pocket was a permissible search incident to a lawful arrest.

As such, the search and seizure that recovered the heroin were valid.  Defendant's Motion is therefore DENIED.

**B.   DISCUSSIONS IN THE ALTERNATIVE**

Because the parties have argued in the alternative, the Court will address their alternative arguments.

///

///

---

[4] Ortega did point out that he was concerned about safety issues involving nearby freeway traffic.  However, this safety fear is unrelated to the pat-down search.

### 1. The Officers Had Probable Cause To Make A Custodial Arrest After Deputy Ortega Smelled Heroin

At the hearing, Defendant appeared to argue that Defendant was under an unlawful custodial arrest at the time of the pat-down searches. The Court disagrees.

It is true that "[t]here is no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." Gallegos v. City of Los Angeles, 308 F.3d 987, 991 (9th Cir. 2002). But even if the stop at issue could be classified as an arrest, e.g., Florida v. Royer, 460 U.S. 491, 501 (1983); United States v. Brignoni-Ponce, 422 U.S. 873, 880-81 (1975), the Court finds that the Deputies had probable cause to arrest Defendant at the time that they pulled Defendant's car over and smelled heroin inside the car.

Ortega knew that other police officers had observed a brief meeting taking place inside a white Toyota RAV-4 at the time and place where a drug transaction was expected to occur, that one of the expected participants was nicknamed "Japo," and that Defendant appeared to fit the description the participant (an Asian person) and his vehicle fit that of the car (a white Toyota RAV-4) involved in the drug transaction. As noted *supra*, these facts provided reasonable suspicion to stop the vehicle and investigate.

In addition, during the traffic stop investigation, Ortega smelled the odor of heroin emitting from inside the vehicle. In light of all these facts, Deputy Ortega had probable cause to arrest Defendant for committing a drug felony. Thus, even if, as Defendant contends, the Terry stop was in fact a custodial arrest, the arrest was supported by

probable cause. The subsequent search of Defendant's pocket was therefore a permissible search incident to a lawful arrest.

### 2.  Inevitable Discovery

The Government argues in its Opposition that the seized evidence is subject to the inevitable discovery rule. The Court agrees.

Even if Defendant's version of events is credited (which it is not), Ortega's conduct would be permissible. When conducting the pat-down search, Ortega felt an object that was large, round, and firm (but soft to the touch). It is true that Ortega did not immediately recognize the object as contraband,[5] and caselaw holds that Ortega was not permitted to squeeze or manipulate the object to determine if it was contraband. See, e.g., Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993) (affirming state court's determination that officer was prohibited from "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket") (internal citation omitted); Davis, 530 F.3d at 1083 ("[I]f, during the course of a lawful patdown, an officer feels an item he recognizes as contraband or evidence, the officer may seize the item. However, the 'incriminating character' of the item must be 'immediately apparent.'") (quoting Dickerson, 508 U.S. at 375-76)).

However, at the time that Ortega felt the bulge -- regardless of whether or not Defendant had admitted to possessing heroin -- Ortega objectively had probable cause to arrest Defendant. At that point, Ortega knew about the ongoing heroin investigation, Defendant's involvement in an apparent drug transaction, and, most importantly,

---

[5] Ortega stated at the hearing that he is not routinely involved in drug-related arrests and investigations.

that the odor of heroin was present inside Defendant's car. Accordingly Ortega had probable cause to arrest Defendant regardless of whether or not Ortega had felt a bulge in Defendant's pocket.  As such, it is apparent "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984); see also United States v. Lang, 149 F.3d 1044, 1047-48 (9th Cir.), *amended by* 157 F.3d 1161 (9th Cir. 1998).

**III. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

DATED:  March 24, 2010

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE